UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO:

| | |
|---|---|
| **Anderson** | 5:07-CV-270-KSF |
| **Byrd** | 5:06-CV-371-KSF |
| **Cone** | 5:07-CV-015-KSF |
| **Trimble** | 5:07-CV-269-KSF |

### OPINION AND ORDER

This matter is before the Court on the motion of Defendant James Polehinke to dismiss the above plaintiffs' claims for punitive damages [DE 1712]. Having been fully briefed, this motion is ripe for review.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant Polehinke moves to dismiss the punitive damage claims of the above Plaintiffs as barred by the Montreal Convention.[1] He incorporates the arguments made by Comair's motion and reply to dismiss punitive damages against the carrier, which were conceded by Plaintiffs and accepted by this Court. *In re Air Crash at Lexington, Kentucky, August 27, 2006*, 2008 WL 1909007 *1 (E.D. Ky. 2008). In addition, Mr. Polehinke argues that Article 29 of the Montreal Convention carries forward the preclusion of punitive damages under the Warsaw Convention,[2] and that same preclusion applies to an agent or servant of the carrier.

Plaintiffs still do not concede the applicability of the Montreal Convention, but urge a decision on the legal question in the event the facts at trial show the applicability of the Montreal

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 S. Treaty Doc. No. 106-45, 1999 WL 33292734.

[2] Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 30000, 3014, T.S. No. 876 (1934), reprinted in 49 U.S.C. § 40105 note.

Convention to them.[3]  [DE 1847-2, p. 2].  They respond that reliance on the Warsaw Convention and interpretative cases is misplaced in light of the language of Article 30 of the Montreal Convention, which entitles servants and agents acting within the scope of their employment to invoke the same "conditions and limits of liability which the carrier itself is entitled to invoke under this Convention." Article 30(1).  Other than for cargo, these limitations are not applicable when the servant's or agent's conduct causing damage was "done with intent to cause damage or recklessly and with knowledge that damage would probably result."  Article 30(3).

A carrier has no limitation on compensatory damages for death or injury of passengers unless it can demonstrate the absence of "negligence or other wrongful act or omission of the carrier or its servants or agents" or that the damage was caused solely by a third party.  Article 21.  Plaintiffs note that where the servant's conduct causing damage is intentional or reckless, it is not possible for a carrier to prove either limitation on compensatory damages.  [DE 1847-2, p. 7].  In light of these provisions, Plaintiffs argue that the result in Article 30(3) of depriving a reckless servant of the limitation of liability for damages for death or injury to a passenger is meaningless and renders Article 30(3) "entirely superfluous" unless the effect is to remove Article 29's prohibition against punitive damages.  [DE 1847-2, p. 8].  Plaintiffs summarized their position as follows:  "By acting recklessly, Mr. Polehinke disqualified himself from receiving the protections available to carriers under the Montreal Convention, including the protection against an award of punitive damages."  [DE 1847, p. 5].

Plaintiffs rely on the plain language of Article 30(3) in support of their position and distinguish cases interpreting the Warsaw Convention.  They state that they have been unable to locate any case addressing the narrow issue presented to this Court.  [DE 1847-2, p. 3]

---

[3]  As before, the Court assumes, for purposes of deciding this motion, the facts at trial would demonstrate that the Montreal Convention applies to Plaintiffs' claims.

2

**II. ANALYSIS**

**A. Standard**

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), all of a plaintiff's allegations are presumed true, and the complaint is construed in the light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005).

**B. Punitive Damages Against a Carrier's Servant Under Montreal Convention**

This Court previously recognized the importance of Warsaw Convention jurisprudence in understanding the meaning of the Montreal Convention. *In re Air Crash at Lexington, Kentucky, August 27, 2006*, 501 F. Supp. 2d 902, 908 (E. D. Ky. 2007). It also recognized when the drafters clarified their intent, which was not consistent with Warsaw jurisprudence. *In re Air Crash at Lexington, Kentucky, August 27, 2006*, 2008 WL 440293, *3 (E.D. Ky. 2008). Accordingly, this analysis begins with the Warsaw Convention.

The Warsaw Convention was silent on the availability of punitive damages. *In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988*, 928 F.2d 1267, 1270 (2d Cir. 1991), *abrogated on other grounds, Zicherman v. Korean Air Lines Co.,* 516 U.S. 217, 228-29 (1996) (holding that compensable harm under the Warsaw Convention, including who may bring suit and type of damages recoverable, is governed by domestic law, not federal common law). The Warsaw Convention, however, contained a provision avoiding any limitation on liability when "the damage is caused by [the carrier's] willful misconduct" or "under the same circumstances by any agent of the carrier acting within the scope of his employment." Article 25(2). In *Lockerbie*, the court assumed the carrier committed willful misconduct in order to decide the legal question of whether a plaintiff may state a claim for punitive damages in a wrongful death action governed by the

3

Warsaw Convention and the Montreal Accord.  *Lockerbie*, 928 F.2d at 1269-70.

The plaintiffs in *Lockerbie* made substantially the same argument as is being made by the Plaintiffs here – that willful misconduct or reckless conduct "lifts any and all limitations on damages" and, thus, allows claims for punitive damages when authorized by local law.  *Id.* at 1285.  The *Lockerbie* court carefully examined the "purposes" of the Convention, "its history, the negotiations leading to its adoption and how the contracting parties have construed the Convention."  *Id.* at 1280.  It concluded that Article 17 "establishes liability for compensatory damages only, and that it would be inconsistent with the purposes of the Warsaw Convention to read Article 17 as permitting the recovery of punitive damages."  *Id.* at 1282.  Regarding the impact of Article 25 and willful misconduct, the court said:  "Article 25 voids only certain provisions in the event of willful misconduct, but the rest of the Convention remains fully operative, and the Convention as it then remains still is inconsistent with the notion of a punitive damages recovery."  *Id.* at 1285.  Even when amendments were considered, the delegates never asked about the possible availability of punitive damages.  *Id.* at 1286.  Finally, the court noted that one of the primary purposes of the Warsaw Convention was to achieve uniformity, and "[a]llowing punitive damages would undoubtedly destroy uniformity" since "[n]o other signatory allows them."  *Id.* at 1287.

When the Montreal Convention was drafted, express language was included in Article 29 prohibiting punitive damages:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this convention or in contract or in tort of otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.  **In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.**

Article 29, emphasis added.  In the "Article-by-Article Analysis of the Convention" and the comparison to the Warsaw Convention, as amended by Montreal Protocol No. 4, Article 29 is explained as follows:

> This Article, taken from Montreal Protocol No. 4, provides that the Convention and

4

> its limits shall be applicable to all actions for damages arising in the carriage of passengers, baggage, and cargo, however such claims may be founded. Thus, for example, in the context of a code-share operation, a passenger's recourse against a contracting carrier, within the meaning of Article 39, would be subject to the provisions of the Convention; neither the contracting carrier, the actual carrier, nor their servants or agents could be held liable outside the Convention under any alternative tort or contract law theories for matters such as, for example, negligent selection of, or failure to properly audit or monitor the safety of, the actual carrier. Questions as to who are the persons who have the right to bring suit and what are their respective rights are left to the law of the forum, including conflicts of law. **As under the Warsaw Convention and its relative instruments, punitive, exemplary, or any other non-compensatory damages are not recoverable.** *See, e.g., In Re: Air Disaster at Lockerbie, Scotland on December 21, 1988*, **928 F.2d 1267, 1281-88 (2d Cir. 1991),** *cert denied*, **502 U.S. 920 (1991).**

S. Treaty Doc. No. 106-45, 1999 WL 33292734 at p. 31, emphasis added. The intent to incorporate *Lockerbie* could not be more clear.

While the Montreal Convention in Article 21 "eliminates all arbitrary limits on air carrier liability with respect to accident victims," *Id.* at p. 14, it does not eliminate all limits on the liability of carriers or their servants or all conditions for recovery. For example, Article 22(1) limits recovery for damage caused by delay of passengers, baggage or cargo to 4150 Special Drawing Rights. *Id.* at p. 46. Article 22(2) limits liability for the destruction, loss, damage or delay of baggage to 1000 Special Drawing rights. *Id.* at p. 47. The removal of limitations of liability for misconduct has meaning in the larger context of the entire Montreal Convention. As the *Lockerbie* court said, only certain provisions are voided "in the event of willful misconduct, but the rest of the Convention remains fully operative, and the Convention as it then remains still is inconsistent with the notion of a punitive damages recovery." *Lockerbie*, 928 F.2d at 1285.

Additionally, the "Article-by-Article Analysis" reflects that Article 30 is merely a clarification, not a change from Warsaw jurisprudence:

> 1.   Paragraph 1 clarifies that servants or agents may avail themselves of the same conditions and liability limitations to which the carrier is entitled under the Convention, if they prove that they were acting within the scope of their employment.
>
> 2.   This paragraph clarifies that the Convention's limits apply to the aggregate of recoveries against the carrier and its servants and agents.

5

3. This paragraph applies a willful misconduct exception to the Convention's conditions and limits of liability with respect to servants and agents and in the aggregation of claims. As with Article 22(5), the exception does not apply to cargo claims. This is consistent with Montreal Protocol No. 4.

S. Treaty Doc. No. 106-45, 1999 WL 33292734 at p. 31.

The Sixth Circuit recognized that the Warsaw Convention "embodies a concrete federal policy of uniformity and certainty." *Bickel v. Korean Air Lines Co., Ltd*, 83 F.3d 127, 130 (1996), *vacated in part on separate issue*, 96 F.3d 151 (6th Cir. 1996). The United States Supreme Court said: "The cardinal purpose of the Warsaw Convention, we have observed, is to 'achiev[e] uniformity of rules governing claims arising from international air transportation.'" *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169 (1999), quoting *Eastern Airlines, Inc. v. Floyd* , 488 U.S. 530, 552 (1991). Interpreting the Montreal Convention to allow punitive damage claims against servants would "undoubtedly destroy uniformity" since [n]o other signatory allows them." *Lockerbie*, 928 F.2d at 1287.

It is the Opinion of this Court that punitive damage claims against servants or agents of a carrier are prohibited under the Montreal Convention, even when the damage results from willful misconduct as defined in Article 30(3). Accordingly, these Plaintiffs are unable to state a plausible claim for punitive damages.

### III. CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that Defendant James Polehinke's Motion to Dismiss Punitive Damage Claims in the above four cases [DE 1712] is **GRANTED**.

This May 23, 2008.



Signed By:

*Karl S. Forester* KSF
**United States Senior Judge**